BARNES and others vs. TAYLOR and others.

A trust was sought to be decreed in favor of the complainants, in lands purchased by the defendant at a sale under foreclosure proceedings more than twenty years before the filing of the bill, and over which, during all that time, the defendant had openly exercised acts of exclusive ownership, in the knowledge, and without challenge on the part of the complainants.

Barnes *v.* Taylor.

·On the ground of the unsatisfactory evidence of an express trust, and of the absence of evidence of any trust from the relation of the parties, the relief was denied, except as to a certain part of the property, which proved not to have been covered by the sheriff's deed to the defendant. As to that part, a partition was decreed, and an account of the rents and profits for six years next preceding the filing of the bill.

On final hearing on pleadings and proofs.

*Mr. S. D. Dillaye,* for complainants.

*Mr. J. S. Aitkin* and *Mr. B. Gummere,* for defendants.

THE CHANCELLOR.

This suit is brought to establish a trust in the defendant, Dr. Taylor, in favor of the complainants, in reference to certain land which the former claims to own, and which was purchased by him at sheriff's sale, under foreclosure of mortgages, one called the Swift mortgage and the other the Cadwallader mortgage. The bill prays an account and partition of the land. The complainants are Mrs. Elizabeth Paxson, the children of William S. Barnes, deceased, and the children of John R. S. Barnes, deceased. The property covered by and sold under the Swift mortgage, was owned by Isaac Barnes, who gave the mortgage upon it. He subsequently conveyed it to his brother-in-law, John R. Smith. On the death of the latter, the property descended to his two sisters— Mary, the wife of Isaac Barnes, and Lydia, wife of Thomas Barnes. Isaac Barnes became his administrator, and sold the land, under the order of the Orphans Court, to William P. Sherman, for $15, and the latter conveyed it to Mary Barnes, (then wife of Isaac Barnes), and Mrs. Paxson (then Miss Barnes), daughter of Lydia, who was then dead. The property was sold in 1851, under foreclosure of the Swift mortgage, in a suit to which Mrs. Barnes and Mrs. Paxson were the parties defendant. The property sold under the Cadwallader mortgage was owned by William Smith, father of John R. Smith. The mortgage was given by him. He died

intestate, and the property descended to his children, the before-mentioned Mary Barnes and Lydia Barnes, and John R. Smith. On the death of John R. Smith, his part of the land descended to his two sisters. On the death of Lydia Barnes, subsequently, her share of the property was inherited by Mrs. Paxson, her only child. By order of the Orphans Court, however, John R. Smith's share was sold, and it was purchased by Joseph A. Yard, who conveyed it to Mrs. Mary Barnes and Mrs. Paxson. On the death of Mrs. Mary Barnes, in 1851, her share descended to her children, William S. Barnes, John R. S. Barnes, and Lydia, wife of Dr. Taylor. The suit for foreclosure of the Cadwallader mortgage was instituted against Mrs. Paxson and the children of Mary Barnes and Dr. Taylor, who was the husband of the daughter. At the sale under these mortgages, the property was purchased by Dr. Taylor, and he has held it as his own ever since (a period of over twenty years before the filing of the bill), exercising acts of ownership over it, and in all things dealing with and treating it as his own. Nor has he, in all that time, so far as appears, ever recognized any right of the complainants, or of William S. Barnes and John R. S. Barnes or their mother, Mary Barnes, or either of them, in it. The complainants allege that, inasmuch as Dr. Taylor was one of the executors of Isaac Barnes, deceased, who was the administrator of John R. Smith, who was the administrator of his father, William Smith, and no account of either administration was ever made, it was the duty of Dr. Taylor to pay off the mortgages out of the estate of Isaac Barnes. It does not appear, however, that any money ever came, or ought to have come, to the hands of John R. Smith from the estate of his father, nor, if any was or ought to have been received by him, that he was, at his death, accountable for anything in that behalf. Nor does it appear that Isaac Barnes, as administrator of John R. Smith, was, at his death, chargeable with any money of the estate of John R. Smith. His final account was settled at June Term, 1847, of the Mercer Orphans Court, and by it there appeared to be in his

hands $6092.38, distributable among creditors, whose claims proved against the estate amounted, on the 4th of January; 1841, to $8578.63. The parties interested in the estate of William Smith appeared to have acquiesced in the administration thereof for fifty years before the filing of the bill, and those interested in the estate of John R. Smith appeared to have acquiesced in the administration of that estate for over thirty years before the filing of the bill. It is alleged by the complainants that Isaac Barnes was trustee of the property in question for his wife and Mrs. Paxson, but the fact does not appear. He probably acted as their agent in collecting the rents, paying taxes and interest, but this agency ended with his death, and if there was, in fact, any trust, it devolved upon his heir-at-law. Undoubtedly, his agency was merely such as might have been expected under the circumstances, and not by virtue of any trust formally committed to him. The considerations presented in this case, in reference to the duty of Dr. Taylor, arising out of the fact that he was one of the executors of the estate of his father-in-law, have been passed upon in the case of *Barnes* v. *Taylor,* (*ante, p.* 259,) decided at this present term. The distinctively different features presented by this case have reference to the alleged dealings by Dr. Taylor with Mrs. Paxson and Mrs. Barnes, his mother-in-law, and the obligations which are claimed to have arisen out of the relations between him and them, and his inability, as the complainants insist, arising from his being a tenant in common with Mrs. Paxson and Mrs. Barnes, to acquire an adverse title as against them by means of purchase at the foreclosure sales. The evidence of express trust, as remarked in the case just referred to, is by no means satisfactory. Nor is there evidence of a trust from the relation of the parties. That Mrs. Paxson and Mrs. Barnes lived in Dr. Taylor's family and were supported by him, is not enough to charge him with the care of their interest in an encumbered estate, or to disqualify him from acquiring it for his own use by purchase at foreclosure sale. He denies, in his answer and testimony, that any agreement whatever ever existed between

them, or either of them, and him on the subject of a trust, or
that any confidence existed between them, or either of them,
and himself in respect to the property in question, or that he
was ever clothed with any trust in their favor in relation to
that property, or that there existed between them and him any
fiduciary relation in regard to any property or interest in
property belonging to them. It does not appear that Mrs.
Barnes ever claimed that any such relation existed, nor that
Mrs. Paxson did so until after the suit to which reference
has just been made, was brought, which was in June, 1874,
and it seems strange that if such relation had been understood
by Mrs. Paxson to exist, she should not, in all of more than
twenty years, at least, have made some inquiry as to the prop-
erty, or some reference to the subject of the trust or her inter-
est therein. If, because of his tenancy in common with her
and Mrs. Barnes by virtue of his curtesy initiate, he was
unable to buy, or buy under the outstanding paramount en-
cumbrance, except it were in trust for his co-tenants to the
extent of their interest therein, those co-tenants are barred by
failure for over twenty years to contribute their proportion of
the money advanced by him; for, in all that time, so far as
appears, none of them ever even referred to the subject,
although the complainants allege in the bill that the property
was bought by him under an express understanding between
Mrs. Paxson and him on the subject; and again, for over
twenty years before the filing of the bill, he had, as before
remarked, exercised notoriously, acts of exclusive ownership
over the property, and had openly claimed to be the exclusive
owner of it, and yet for all that period his ownership had not
been challenged. The defendants set up in the answer the
statute of limitations, and it is applicable in bar, so far as the
property covered by the Swift and Cadwallader mortgages is
concerned. It appears that one of the lots described in the bill,
was not covered by either of those mortgages, and therefore,
Dr. Taylor has never had title to it under either of the foreclos-
ures, and he does not claim title otherwise. He alleges that
until the filing of the bill, he supposed that this land was in-

cluded in and covered by the mortgage held by Lambert Cadwallader, and that the title to it had passed to him by sale under the foreclosure of that mortgage, but he says he is satisfied that he was in error. The complainants are entitled to a decree of partition of that lot, and to an account of the rents and profits for six years next preceding the filing of the bill. It is urged by defendants' counsel, that no partition should be decreed, because there is no sufficient description fixing the boundaries of that lot. The lot is described in the bill by its ancient description, and there is nothing to lead to the conclusion that the identity of the property cannot be established and its boundaries ascertained therefrom. On the other hand, I am satisfied that both may be done without great difficulty. All other relief prayed by the bill will be denied.